UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TRINA M. COX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 2:18-cv-00355-JD-SLC |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, *sued as Andrew M. Saul, Commissioner of Social Security*,[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Trina M. Cox appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (DE 1). The appeal was referred to the undersigned Magistrate Judge on February 5, 2019, by District Judge Jon E. DeGuilio pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Northern District of Indiana Local Rule 72-1, for the issuance of a Report and Recommendation. (DE 16).

Having reviewed the record, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation. This Report and Recommendation is based on the following findings of fact and principles of law.

---

[1] Andrew M. Saul is now the Commissioner of Social Security, *see Aleithia Ann F. v. Saul*, No. 17 C 9158, 2019 WL 2644214, at *1 n.1 (N.D. Ill. June 27, 2019), and thus, he is automatically substituted for Nancy A. Berryhill in this case, *see* Fed. R. Civ. P. 25(d).

## I.  BACKGROUND

Cox applied for DIB and SSI in March 2013, alleging disability as of December 1, 2012. (DE 13 Administrative Record ("AR") 61, 71).  In January 2015, administrative law judge Janice M. Burning (the "ALJ") conducted a hearing and rendered an unfavorable decision to Cox.  (AR 8-60).  Cox appealed the ALJ's decision to the district court, and on September 7, 2017, United States Magistrate Judge Paul R. Cherry determined that the ALJ's decision was not supported by substantial evidence and remanded Cox's case to the Commissioner.  (AR 628-42); *see also Cox v. Berryhill*, No. 2:16-CV-156-PRC, 2017 WL 3911527 (N.D. Ind. Sept. 7, 2017).

On March 1, 2018, the ALJ conducted a second administrative hearing at which Cox, who was represented by counsel, and a vocational expert testified.  (AR 527-54).  On May 22, 2018, the ALJ again rendered an unfavorable decision, finding that Cox was not disabled.  (AR 505-26).  Cox did not file exceptions to the ALJ's decision to the Appeals Council, and the Appeals Council did not assume jurisdiction over the ALJ's decision.  (DE 1 ¶ 7).  On September 19, 2018, Cox filed the instant appeal of the ALJ's May 2018 decision to the district court pursuant to 20 C.F.R. § 404.984 and 42 U.S.C. §§ 405(g) and 1383(c).  (DE 1).

In her appeal, Cox alleges that the ALJ:  (1) did not support the residual functional capacity ("RFC") determination with substantial evidence; (2) in crafting the RFC, improperly discredited the opinions of Cox's treating psychiatrist, Farzana Khan, M.D.; (3) violated the "law of the case doctrine"; and (4) failed to provide adequate reasons for discounting Cox's statements and testimony regarding her symptoms.  (DE 17 at 2-24).

## II. THE ALJ's FINDINGS

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

In determining whether Cox is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required her to consider the following issues in sequence:  (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the Commissioner's listings, *see* 20 C.F.R. Pt. 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[2]  *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.  *Id*.  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner.  *Id*. at 885-86.

At step one, the ALJ found that Cox had not engaged in substantial gainful activity since her alleged onset date and that she meets the DIB-insured status requirements through December 31, 2017.  (AR 510).  At step two, the ALJ found that Cox had the following severe impairments:

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. §§ 404.1520(e), 416.920(e).

spinal disorder, obesity, anxiety, depression, and history of drug abuse. (AR 510-11).

At step three, the ALJ concluded that Cox did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 511-14). Before proceeding to step four, the ALJ determined that Cox's symptom testimony was "not entirely consistent" with the medical evidence and other evidence in the record (AR 516), and assigned her the following RFC:

> [T]he claimant has the [RFC] to perform light work but she can never climb ladders, ropes or scaffolding[;] and [she can] no more than occasionally, climb ramps and stairs, balance, stoop, crouch, kneel, crawl, bend or twist. She is limited to understanding, remembering and carrying out no more than simple routine tasks, with the same tasks being performed day in and day out with no public contact and no more than occasional contact with coworkers and supervisors. She cannot perform tasks which involve teamwork (should not be required to engage in work where one has to work with others to complete the same job task(s)) but she can work independently; and have no strict quotas (not engage in work where someone is checking up on the claimant to make sure he/she is on pace with a set goal, quota or with other employees), but can do work where performance is measured by what is completed by the end of the workday.

(AR 514-15). Based on this RFC, the ALJ found at step four that Cox could not perform her past relevant work. (AR 519). The ALJ considered the testimony of the vocational expert and other evidence in the record and determined at step five that Cox could perform other jobs in the national economy that exist in significant numbers, and therefore, her applications for DIB and SSI were denied. (AR 519-20).

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42

4

U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## IV.  ANALYSIS

### A. The Law of the Case Doctrine

Cox contends that the ALJ violated the law of the case doctrine by failing to conform to Judge Cherry's Opinion, which required the ALJ to address a psychological consultative exam performed on June 5, 2013, by state agency physician Caryn Brown, Psy. D. HSPP, and the Global Assessment of Functioning ("GAF") scores of 50[3] assigned by Dr. Brown and Dr. Khan.

---

[3] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed., Text Rev. 2000). A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* "The American Psychiatric Association no longer uses the GAF as a metric." *Spencer v. Colvin*, No. 13-cv-1487, 2015 WL 684545, at *17 n.5 (C.D. Ill. Feb. 17, 2015) (citing Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)). However, medical providers of record used GAF scores in assessing Cox, so the GAF is relevant to the ALJ's decision. *See id.* (citing *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)).

5

"The *law of the case doctrine* requires that 'once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case.'" *Middleton v. Berryhill*, No. 16 CV 11136, 2018 WL 4384566, at *6 (N.D. Ill. Sept. 14, 2018) (emphasis in original) (quoting *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991)). "The law of the case doctrine is equally applicable to judicial review of administrative decisions." *Alesia v. Berryhill*, No. 16 CV 9806, 2018 WL 3920534, at *6 (N.D. Ill. Aug. 16, 2018) (citation omitted). "It requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998). A court or administrative body involved in a later phase of a lawsuit may not re-open questions decided by a higher court or in an earlier phase of the lawsuit. *Larsen v. U.S. Navy*, 887 F. Supp. 2d 247, 251 (D.D.C. 2012) (citing *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C.Cir.1995)). "A ruling that evidence was insufficient to support some finding is the type of ruling that establishes the law of the case." *Wilder*, 153 F.3d at 803.

In her report, Dr. Brown found that after five minutes, Cox "correctly identified two of three items," and correctly recited six digits forward and four digits backward. (AR 417). Cox "was able to complete [Serial Sevens] in a slow manner by counting on her fingers. She made several errors." (AR 417). Dr Brown reported that Cox's fund of information, mathematical reasoning, and practical judgment were "fair." (AR 417). Dr. Brown diagnosed Cox with Post Traumatic Stress Disorder, panic, major depressive disorder, opioid abuse (within the past four months), and assigned a GAF score of 50. (AR 418). Dr. Brown opined that Cox "may need assistance managing her funds." (AR 418).

Dr. Khan began seeing Cox in October 2008 and continued seeing her at least once a

6

month through February 2018.  (*See* AR 501, 764).  In reports dated October 2012 and October 2014, Dr. Khan assigned Cox a GAF score of 50.  (AR 501, 504).

In the Commissioner's first decision, the ALJ made the following assessment of Dr. Brown's report:  "[Cox] underwent a psychological consultative examination on June 5, 2013 and complained of flashbacks, crying spells, panic attacks and difficult with concentration. . . . However, [Cox] nevertheless presented as coherent with an appropriate affect and demonstrated only mild difficulty with sustained concentration." (AR 20).  The ALJ did not mention the GAF score assigned in Dr. Brown's or Dr. Khan's reports.

Judge Cherry ordered a remand of the ALJ's decision for the following reasons:  (1) the ALJ failed to adequately address how Dr. Brown's report relates to limitations assigned in the mental RFC (AR 639-40); (2) the ALJ ignored the evidence contrary to her conclusions—that is, the GAF scores and rankings of Cox's abilities assessed by Dr. Cox and Dr. Khan (AR 640-41); and the ALJ did not apply Social Security Ruling 16-3p (AR 641-42).

On remand, the ALJ, again, only briefly analyzed Dr. Brown's report.  The ALJ stated that Cox "underwent a consultative psychological examination on June 5, 2013, which while showing multiple depression and anxiety related complaints, reveals the claimant demonstrated only mild difficulty concentrating." (AR 515).  The ALJ did not otherwise discuss Dr. Brown's report.

The ALJ did discuss Dr. Khan's October 2014 and October 2012 reports, but failed to mention the GAF scores.[4]  The ALJ assigned the reports "little decisional weight" because they: failed to provide examples of support or identify "specific physical limitations"; inconsistently

---

[4] It is not clear from the ALJ's analysis whether she was only addressing Dr. Khan's October 2014 report or both the October 2014 report and the October 2012 report.  (*See* AR 517 (referencing AR 501-02); *see generally* AR 501-04).  However, for the sake of argument, this analysis assumes that the ALJ was addressing both reports.

7

stated that Cox could not maintain full-time employment but that her symptoms were controlled by medicine; and were not consistent with other evidence of record. (AR 517-18). Additionally, the ALJ provided an inaccurate assessment of the GAF score of 50 Dr. Khan assigned in her February 2018 report.[5] (AR 518-19; *see generally* AR 764-65).

Cox contends that the ALJ violated the law of the case doctrine by failing to address Dr. Brown's report and the GAF scores. The Commissioner asserts that the ALJ provided an adequate discussion of these issues, and that the unaddressed portions the reports are not inconsistent with the mental RFC. The Commissioner also contends that the ALJ determined Cox's limitations with respect to social interaction, concentration, persistence, and pace, consistent with issues that Judge Cherry left open on remand. The Commissioner concedes that the ALJ's analysis of the February 2018 GAF score was flawed, but insists the error was harmless.

Cox's arguments are persuasive. Judge Cherry faulted the ALJ because in crafting the RFC she provided inadequate discussions of Dr. Brown's report and the GAF scores. Absent "compelling grounds for departure from" Judge Cherry's decision, the ALJ was not free to ignore these deficiencies on remand. *Macklin v. Colvin*, No. 1:13-CV-00020-JMS, 2013 WL 5701048, at *4 (S.D. Ind. Oct. 18, 2013) (citation and internal quotation marks omitted).

But the ALJ's analysis of Dr. Brown's report on remand is almost a word-for-word retelling of the analysis in the first decision. (*Compare* AR 20, *with* AR 515). The Commissioner is correct that on remand the ALJ provided a more robust analysis of the

---

[5] The ALJ stated that a GAF score of 50 is "not suggestive of serious dysfunction and further indicates that claimant's mental status was reasonably within normal range." (AR 518-19). To the contrary, a GAF score of 41 to 50 denotes "*[s]erious* symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any *serious impairment* in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013) (emphasis added). Thus, the ALJ's assessment of Cox's February 2018 GAF score cannot substitute as an analysis of the other GAF scores.

limitations assigned in the mental RFC as a whole. However, the problem is that the ALJ relied solely on evidence presented during the first hearing in determining Cox's limitations on remand.[6] *See Wilder*, 153 F.3d at 803 ("New evidence can furnish compelling grounds for departure from a previous ruling." (collecting cases)); *Smith v. Astrue*, No. 09 C 6210, 2011 WL 722539, at *13 (N.D. Ill. Feb. 22, 2011) ("Because new evidence was presented at the second hearing, the ALJ was permitted to revisit this issue. Altering his conclusion, however, was appropriate only if the new evidence changed things."). Judge Cherry "explained why [the ALJ's analysis of Dr. Brown's report] was insufficient. The administrative law judge ignored [his] discussion. She was not free to do that." *Wilder*, 153 F.3d at 803 (citation and internal quotation marks omitted).

Moreover, the ALJ's decision fails to accurately address the GAF scores. The ALJ gave Dr. Khan's October 2012 and October 2014 reports "some consideration" as they "relate[] to [Cox's] mental capacity," and so did not completely disregard them. (AR 517). However, the ALJ gave no indication whether she considered Dr. Khan's GAF scores, and if so, how much weight she assigned to them. Furthermore, to the extent that the ALJ's analysis of Dr. Khan's February 2018 GAF score may substitute as an analysis of the other GAF scores, this analysis is flawed because the ALJ inaccurately identified limitations indicated in a GAF score of 50. (*See* AR 519; *supra* note 5). Thus, despite Judge Cherry's finding that the ALJ's failure to discuss the GAF scores in the first decision was "not permitted and necessitate[d] remand" (AR 641), the ALJ "failed to include [the limitations indicated by the GAF scores] or sufficiently explain why they should not be included" in determining Cox's mental limitations. *Beaver v. Berryhill*, No.

---

[6] The undersigned Magistrate Judge acknowledges that the ALJ considered Cox's ability to focus at the second hearing in crafting the mental RFC. (AR 516). However, the ALJ made the same remarks regarding Cox's ability to participate in the first hearing, thus minimizing the novelty of the ALJ's observation at the second hearing.

2:17-CV-349-JEM, 2018 WL 4377701, at *3 (N.D. Ind. Sept. 14, 2018).

Moreover, the ALJ did not cure her failure to consider this evidence by providing a lengthy analysis of other evidence in crafting the RFC.  For example, Dr. Brown reported that Cox completed the Serial Sevens tests in a slow manner, counting on her fingers, and making several errors, and that she "may need assistance managing her funds." (AR 417-18).  The Court cannot say how or if this evidence affected the ALJ's conclusion that Cox could perform "simple routine tasks" or take care of finances for herself and her father (AR 514-15, 517); *see Beaver*, 2018 WL 4377701, at *3 ("That conclusion does not follow from the reports, leaving the Court without a 'logical bridge' between the evidence and the ALJ's conclusion that Plaintiff's mental limitations would not affect her work." (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010))).

Similarly, a GAF score of 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013).  Such symptoms conflict with the ALJ's assessment that Cox's "mental status was reasonably within [a] normal range" (AR 519) and that she can interact with others occasionally (AR 517).  However, it is not clear whether the ALJ considered this information in determining Cox's social or mental limitations.[7]

Therefore, I CONCLUDE that the ALJ violated the law of the case doctrine in failing to

---

[7] The ALJ also discredited Dr. Khan's February 2018 opinion that Cox was not a candidate for full-time employment, in part, because of the ALJ's flawed conclusion that a GAF score of 50 is "not suggestive of serious dysfunction and further indicates that claimant's mental status was reasonably within normal range." (AR 518-19; *see generally* AR 764-65).  Had the ALJ considered all the GAF scores and the actual limitations they denote she may have assigned greater weight to Dr. Khan's February 2018 report.

assess Dr. Brown's report and the assigned GAF scores.

### B. Evidence Contrary to the Limitations Assigned in the RFC

It is the province of the ALJ to craft the RFC and to resolve conflicts in evidence when doing so. *Diaz v. Chater*, 55 F.3d 300, 306, n.2 (7th Cir. 1995). "The administrative law judge is not required or indeed permitted to accept medical evidence if it is refuted by other evidence— *which need not itself be medical in nature* . . . ." *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009) (emphasis in original) (quoting *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995)). At the same time, "[w]hen an ALJ denies benefits, [she] must build an accurate and logical bridge from the evidence to his conclusion, and [she] must may not 'play doctor' by using [her] own lay opinions to fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 556-57 (7th Cir. 2012) (citations and internal quotation marks omitted).

The ALJ may consider whether a claimant's ability to perform daily activities is "consistent with the objective medical evidence and the other evidence of record, or "more likely to reduce his or her capacities to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016). However, the Seventh Circuit Court of Appeals has "cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (collecting cases). The ALJ must be cognizant of the "differences between activities of daily living and activities in a full-time job . . . ." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). "[A] person has more flexibility in scheduling" her daily activities, she can receive assistance from others, and she is not held to a minimum standard of performance, as she would be "by an employer." *Id.*; *see Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("But even if he plucked the phrase from one of Punzio's treatment

11

notes, her ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace." (collecting cases)); *Mendez*, 439 F.3d at 362 ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."); *Vandergraff v. Berryhill*, No. 4:17-CV-06-JEM, 2018 WL 1282293, at *4 (N.D. Ind. Mar. 13, 2018) (collecting cases).

Cox completed two functional reports attesting to her daily activities. (AR 229-38, 248-60). In these reports, Cox indicated that once a month she pays her father's bills or makes sure that he takes care of them. (AR 230-31). Cox does not do outdoor work because she has difficulty concentrating but is able to sit down and dust or do the laundry once a week for 30 minutes. (AR 232, 254). Cox also indicated that she can drive a car, pay bills, count change, handle savings accounts, and use a checkbook or money orders. (AR 233).

Cox claimed that she has a friend who cooks for her, but otherwise she only prepares TV dinners, hotdogs, sandwiches, etc. (AR 232, 254). According to her testimony and the functional reports, Cox only leaves her house for doctors' appointments and to buy groceries. (AR 254, 256, 543). Evidence indicates that Cox's friends and children help her with the shopping, remembering to take her medication, and other daily activities. (AR 232-34, 253-55; *see also* AR 542-43). Similarly, a disability report dated November 2013 states that Cox "need[s] help with household duties, cleaning, lifting, etc.," that she needs "help shopping," and she "does not cook anymore." (AR 268).

According to the ALJ, Cox demonstrated sufficient concentration to participate in two administrative hearings. (AR 516). And while some evidence indicates that Cox is able to live with her boyfriend or children (AR 333, 337, 501), other evidence shows that Cox was not able

to do so on a sustained basis (AR 237, 2456-57, 373, 378, 382). Cox reported in April 2013 that she "has time constraints" because she "runs errands" for her parents and brother. (AR 451). Additionally, Cox stated in medical records that she cares for her son who has special needs. (AR 501, 764). However, during the second administrative hearing Cox testified that her son takes care of her and she telephonically participates in his IEP[8] meetings. (AR 536-37, 542).

The ALJ assigned the following mental RFC:

> [Cox] is limited to understanding, remembering and carrying out no more than simple routine tasks, with the same tasks being performed day in and day out with no public contact and no more than occasional contact with coworkers and supervisors. She cannot perform tasks which involve teamwork (should not be required to engage in work where one has to work with others to complete the same job task(s)) but she can work independently; and have no strict quotas (not engage in work where someone is checking up on the claimant to make sure he/she is on pace with a set goal, quota or with other employees), but can do work where performance is measured by what is completed by the end of the workday.

(AR 514-15).

The ALJ supported these limitations with the following evidence of Cox's daily activities: Cox was able to focus at both hearings; she can handle funds for herself and her father; she can drive; she cares for a child with special needs; she attends IEP meetings; and she performs "activities of daily living with no evidence of needing assistance." (AR 517). In assessing Cox's social limitations, the ALJ noted that she gets along with her child at home and "has been able to get along with others sufficiently for managing her father's bills . . . doing errands for others and liv[ing] with others." (AR 517).

The ALJ's analysis is flawed because she failed to assess evidence contrary to her

---

[8] An IEP is an Individualized Education Program, which is mandated by state and federal law that outlines the specific education services that a student needs to receive and tailored to each special education eligible student based on that student's needs. *See* 20 U.S.C. §§ 1400 *et seq.*; 511 Ind. Admin. Code 7 *et seq.*

13

conclusions. In particular, the ALJ failed to address evidence that Cox receives assistance remembering to take medication, prepare meals, do the shopping, and other "household duties, cleaning, lifting, etc." (AR 268; *see also* AR 232-34, 254-55, 542-43).

The ALJ did assess Cox's testimony that her son helps her with activities of daily living at step three of the five-step analysis. The ALJ did not state how much weight she assigned to this testimony, but apparently, she discounted it for the following reasons:

> The evidence reveals that [Cox] is not unable to tend to her own care and there is no evidence that she needs home health care. There is also no evidence that she needs to be in a skilled nursing facility. Additionally, [Cox] did not testify that someone is with her when her son is in school.

(AR 514). This explanation is insufficient, at least for purposes of an RFC analysis. The ALJ did not explain what evidence she was referring to that established Cox could tend to her own care. *See Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) ("An ALJ's credibility determinations are given special deference, but the ALJ must still build an accurate and logical bridge between the evidence and the result." (citation and internal quotation marks omitted)). The "mere recitation of evidence does not substitute for meaningful analysis of evidence." *Murphy v. Berryhill*, No. 1:18CV118, 2019 WL 1123511, at *16 (N.D. Ind. Mar. 11, 2019) (citation omitted). The ALJ should have explained how needing assistance from her son contradicted her symptom testimony or the functional reports. *See id.* ("The ALJ, for example, failed to explain how Plaintiff's occasional ability to feed her cat contradicted any of her allegations of extreme pain. The ALJ failed to explain how talking on a telephone or maintaining contact with her mother undermined Plaintiff's alleged inability to work 40 hours each week.").

Furthermore, the fact that Cox receives help from friends and family but does not need

constant care from a medical professional does not indicate that she is able to perform the activities required by a full-time job. *See Punzio*, 630 F.3d at 712 ("Concluding that the claimant 'is not a raving maniac who needs to be locked up' is a far cry from concluding that she suffers no limits on her ability to function." (quoting *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008))); *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010) ("But an ability to engage in 'activities of daily living' (with only mild limitations) need not translate into an ability to work full time. In this case it may mean nothing more than that Spiva can survive outside a mental institution or halfway house.").

The Commissioner is correct that Cox indicated that she is able to handle her own finances and help her father manage his. However, the ALJ should have discussed evidence that Cox's ability to complete these tasks is limited or met with difficulty. (AR 418, 539, 765); *see Spiva*, 628 F.3d at 352 ("[The ALJ] didn't mention the evidence that Spiva's performance of household chores was incompetent; as the aunt with whom he had lived for a time stated, he needed help with everything because 'his mind runs a lot.'").

The ALJ also failed to address the tension between a statement in a medical report dated April 2013 that Cox ran errands for family members and more recent evidence that she does not leave her house except to go to doctors' appointments or buy groceries.[9] "If an ALJ finds that a claimant's activities of daily living contradict a claimant's subjective allegations, an ALJ must explain how a claimant's particular activity of daily living contradicts a claimant's particular subjective allegation." *Murphy*, 2019 WL 1123511, at *16 (citing *Zurawski*, 245 F.3d at 887).

"Although an ALJ need not mention every snippet of evidence in the record, the ALJ

---

[9] In fact, approximately four months after Cox stated that she ran errands for her family, she claimed her conditions had worsened to the point that she can no longer do things she used to, including going outside or playing bingo. (AR 256-57).

15

must connect the evidence to the conclusion; in so doing, [she] may not ignore entire lines of contrary evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (collecting cases). Here, the ALJ failed to address conflicts between the mental and social limitations she assigned and evidence that Cox receives help from other persons (both her son and a friend) in her daily activities, experiences difficulty in handling finances, and may not run errands for family members. *See, e.g.*, *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) ("We have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." (citations omitted)); *Gentle*, 430 F.3d at 867 ("Uncontested evidence not mentioned by the administrative law judge reveals that she performs these chores with difficulty, and with the aid of her sister, a neighbor, and another woman.").

Nor is the ALJ's failure to discuss this evidence harmless. If the ALJ considered this evidence, she may have found that Cox could not "work independently" (AR 514) or perform "simple routine tasks . . . day in and day out," (AR 517-18); *see Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000) (explaining that harmless errors are those that do not ultimately impact the outcome of the determination (citation omitted)). Therefore, I CONCLUDE that the mental RFC is not supported by substantial evidence.[10]

### V.  CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that the the decision of the Commissioner be REVERSED, and the case be REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation.

---

[10] Because the mental RFC is not supported by substantial evidence, the undersigned Magistrate Judge does not reach Cox's other arguments.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties. NOTICE IS HEREBY GIVEN that within 14 days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

Entered this 15th day of August 2019.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge